**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ERNEST JENNINGS,** | : | |
| | : | |
| **Petitioner,** | : | **CIVIL NO. 3:CV-06-0679** |
| | : | |
| **v.** | : | **(Judge Vanaskie)** |
| | : | |
| **WARDEN K. HOGSTEN,** | : | |
| | : | |
| **Respondent.** | : | |

**MEMORANDUM**

**I.     Introduction**

Petitioner, Ernest Jennings, an inmate confined at the Allenwood Federal

Correctional Institution ("FCI-Allenwood"), in White Deer, Pennsylvania, commenced

this action by filing a Petition for a Writ of Habeas Corpus (Dkt. Entry 1-2) pursuant

to 28 U.S.C. § 2241.  Petitioner, proceeding pro se, challenges the denial of parole

by the United States Parole Commission ("Commission").  Respondent filed a

Response (Dkt. Entry 6) to the Petition.  Petitioner had the option of filing a reply, but

did not do so.  Accordingly, the matter is ripe for disposition.  For the reasons set

forth below, the Petition will be denied.

**II.     Background**

On May 11, 1993, Petitioner was sentenced by the District of Columbia

Superior Court to a prison term of ten years to life for possession of a firearm during

a crime of violence and for second degree murder.  (Dkt. Entry 1-2 at 2.)  His parole

eligibility date was August 4, 2000.  (Dkt. Entry 6, Exhibit 1.)  An initial parole hearing

was held on September 28, 1998, and rehearings were held on October 13, 2000,

October 29, 2002, and October 26, 2005.  Petitioner makes the following claims in

his Petition: (1) the Commission improperly changed his guideline range at each

parole hearing; (2) the Commission improperly considered the nature of his crime to

justify a departure from the guideline range; and (3) Petitioner was denied the right to

appeal each of the Commission's decisions.  (Dkt. Entry 1-2 at 5.)

Jurisdiction over parole decisions for District of Columbia offenders has been

transferred from the District of Columbia Parole Board to the Commission.  See

National Capital Revitalization and Self-Government Improvement Act of 1997

("Revitalization Act"), Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745

(effective August 5, 1998); D.C. Code § 24-131 (2001).  The Revitalization Act

requires the Commission to follow D.C. parole law and regulations, but also gave it

"exclusive authority to amend or supplement any regulation interpreting or

implementing" D.C. parole laws.  See D.C. Code § 24-131 (formerly §24-1231).

Pursuant to its authority, the Commission expanded the "total point score"

calculation that is contained in the 1987 D.C. Board of Parole guidelines.  28 C.F.R.

§ 2.80.  Under the 1987 guidelines, each prisoner was assigned a score, which was

used as a guide to determine whether an inmate should be paroled or held in prison for a rehearing.  This score was calculated by adding or subtracting points for pre- and post- incarceration factors, including whether the prisoner's current conviction "involved violence against a person."  Ellis v. District of Columbia, 84 F.3d 1413, 1416 (D.C. Cir. 1996).  The Board, however, had discretion to grant or deny parole notwithstanding the result recommended by the scoring system.

The 1987 guidelines were in effect until August 5, 1998.  At the time of Petitioner's initial parole hearing on September 25, 1998 and his rehearing on October 13, 2000, an expanded version of the "total point score" calculation had been adopted by the Commission.  See 28 C.F.R. § 2.80 (1999). This revised scoring system calculated a "salient factor score" for purposes of determining risk of recidivism.  The salient factor score was then incorporated into a scoring system that took into consideration not only the risk of recidivism, but also such matters as current or prior violence and death of the victim.  See Reynolds v. Williamson, No. 3:04-CV-2396, 2005 WL 3050154, at *1 (M.D. Pa. Nov. 14, 2005).

In connection with Petitioner's initial hearing on September 28, 1998, the Commission calculated Petitioner's salient factor score as 5, indicative of only a "fair" risk for parole, and a total score of eight (8) points, indicating that parole should be denied and a rehearing conducted within 18 to 24 months, meaning the additional

time to be served prior to reconsideration for parole.  (Dkt. Entry 6, Exhibit 3.)  The

Commission denied parole and ordered a rehearing in December 2000.

Petitioner's rehearing occurred on October 13, 2000.  (Dkt. Entry 6, Exhibit 4).

At the rehearing, the Commission calculated his total score as six (6) points, which

reflected a deduction of two (2) points for superior program achievement.  (Id.,

Exhibits 4, 5.)  The Commission found his rehearing guideline range to be 18 to 24

months, denied parole, and ordered a rehearing in October 2002, after 24 months.

(Id., Exhibit 5.)

The next rehearing occurred on October 29, 2002. (Dkt. Entry 6, Exhibit 6.)

Prior to this rehearing, the regulations concerning parole of D.C. offenders were

changed to require the Commission to calculate the "total guideline range" of months

to be served prior to release on parole.  See 28 C.F.R. § 2.80 (2003)(rule change

effective September 13, 2002).  The revised regulation was made applicable to

inmates such as Petitioner who had been denied parole under the former rule.  28

C.F.R. § 2.80(a)(5).  Thus, in connection with the October 29, 2002 hearing, the

Commission followed the new system.

The revised rule still used a salient factor score to assess the parole risk plus

a scoring system to assess the seriousness of the offense and the offender's

background.  28 C.F.R. § 2.80(c)-(f).  This scoring system results in a "base

4

guideline range," which is to be added to the months the offender must serve before being eligible for parole.  28 C.F.R. § 2.80(i).  Adjustments to the aggregate guideline range are then made to reflect the offender's prison record.  28 C.F.R. § 2.80(j) & (k).  The calculations produce a guideline range of imprisonment to be served prior to release on parole.  28 C.F.R. § 2.80(m).

Applying the new rule to Jennings left his base score of 8 unchanged. (Dkt. Entry 6, Exhibit 6.)  The Commission went to the next step in the calculation, which was to determine the base guideline range from the table set forth at 28 C.F.R. § 2.80(h), which in this case was 72 to 96 months.  (Dkt. Entry 6, Exhibit 7 at 2.)  The Commission then added 98 months to the minimum and maximum number of months in the base guideline range, 98 months being the number of months Jennings was required to serve before being eligible for parole.  28 C.F.R. § 2.80(i) & (l).  The Commission then added to the minimum and maximum months in the guideline range the minimum and maximum months in the applicable guideline range for Jennings's disciplinary infractions –  0 to 8 months. 28 C.F.R. § 2.80(j).  Next, the Commission subtracted 18 to 24 months from the minimum and maximum, respectively, for superior program achievement.  28 C.F.R. § 2.80(k).  The resulting guideline range was 152 to 178 months.  (Dkt. Entry 6, Exhibit 6.)  As of the time of the hearing, Petitioner had served about 125 months in prison.  The Commission

denied parole and ordered a reconsideration hearing for October, 2005.  (Id., Exhibit 7.)

The most recent parole hearing occurred on October 26, 2005.  (Dkt. Entry 6, Exhibit 8.)  The guidelines set forth in 28 C.F.R. § 2.80 (2003) still applied, and the guideline range remained at 152 to 178 months.  Despite the fact that Petitioner had served 161 months on his guideline range of 152 to 178 months, the Commission denied parole and ordered a rehearing in October, 2008.  (Id., Exhibit 9.)  In its Notice of Action, the Commission explained this departure from the guideline range as follows:

> After consideration of all factors and information presented, a decision above the new total guideline range is warranted because you are a more serious risk than indicated by your Base Point Score in that your offense behavior involved the cold-blooded murder of an individual whom you perceived was a threat to you.  Your reckless conduct showed a disregard for human life, as you walked up to a car in which the subject and two others were sitting and fired 4 rounds from an automatic weapon into the car, striking the victim three times and another victim once in the foot.  The wounding of another victim is not adequately captured in the Base Point Score and indicates that you are a more serious risk than the score of 8 infers.

(Dkt. Entry 6, Exhibit 9.)

III.   **Discussion**

   A.   **Scope of Review**

The Commission is vested with discretion to determine a D.C. prisoner's

eligibility for parole.  See United States v. Addonizio, 442 U.S. 178 (1979);

Muhammad v. Mendez, 200 F. Supp. 2d 466 (M.D. Pa. 2002); McRae v. Hyman,

667 A.2d 1356 (D.C. 1995) (holding that the District's parole scheme confers

discretion to grant or deny parole, and the scoring system creates no liberty interest

overriding the exercise of that discretion).  However, "[a] legislative grant of

discretion does not amount to a license for arbitrary behavior." Block v. Potter, 631

F.2d 233, 236 (3d Cir. 1980)(citations omitted).  "[T]he Due Process Clause contains

a substantive component that bars certain arbitrary, wrongful government actions

regardless of the fairness of the procedures used to implement them." Foucha v.

Louisiana, 504 U.S. 71, 80 (1992) (internal quotation omitted).

        The function of judicial review on a petition for writ of habeas corpus in the

parole context is to determine whether the Commission abused its discretion.

Furnari v. Warden, 218 F.3d 250, 254 (3d Cir. 2000).  The court is not empowered to

substitute its judgment for that of the Commission in evaluating a habeas petitioner's

claims, unless the Commission's exercise of discretion represents an egregious

departure from rational decision-making.  Id.  The Third Circuit routinely has

recognized that a federal court's review of a decision issued by the Commission is

limited.  Id.  The standard applied in such a review "'is not whether the

[Commission's decision] is supported by the preponderance of the evidence, or even

by substantial evidence; the inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons.'"

Id. (quoting Zannino v. Arnold, 531 F.2d 687, 691 (3d Cir. 1976)).  Judicial review, however, should consider whether the Commission "'has followed criteria appropriate, rational and consistent' with its enabling statutes so that its 'decision is not arbitrary and capricious, nor based on impermissible considerations.'" Id. (quoting Zannino, 531 F.2d at 690).

> **B.    The Commission properly applied the guidelines in effect at the time of each of Petitioner's parole hearings.**

Petitioner claims that the Commission changed his guideline range at each of his four parole hearings.  (Dkt. Entry 1-2 at 5.)  As explained in the background section above, the method of calculating the guideline range changed between Petitioner's second hearing on October 13, 2000 and his third hearing on October 29, 2002.  The new regulations specifically called for their application to D.C. offenders such as Petitioner, who received their initial hearing before the regulations were revised to require a determination of an advisory guideline range of imprisonment.  See Reynolds, 2005 WL 3050154, at *2.  Thus, Petitioner's guideline range was not arbitrarily changed, but was calculated in accordance with the guidelines that were in effect at the time of each hearing.

To the extent that Petitioner is suggesting that the revised regulations could

not be applied to him without running afoul of the *ex post facto* proscription, he has

not shown that the new regulations created a significant risk of increased prison time

for him necessary to establish an entitlement to relief.  See Glascoe v. Bezy, 421

F.3d 543, 547-48 (7th Cir. 2005).  That revised regulations were employed to

determine a guideline imprisonment range does not, in and of itself, violate the *ex*

*post facto* clause.  See Keitt v. U.S. Parole Commission, 238 Fed.Appx. 755, 758-60

(3d Cir. 2007).  A habeas petitioner must show that *his* incarceration will be

prolonged by application of the new regulations, and Jennings has not done so here.

Indeed, the courts consistently have rejected *ex post facto* challenges to the

Commission's application of revised regulations to guide parole decisions for D.C.

offenders who are in the same situation confronting Jennings.  Id.; Hargrow v. Minor,

Civil No. 1:CV-06-0683, 2007 WL 2068628, at *4 (M.D. Pa. July 17, 2007); Skinner

v. Hastings, Civil Action No. 7:05-370, 2006 WL 2457934, at *3 (E.D. Ky Aug. 22,

2006); Hill v. Lamanna, No. 03-160, 2006 WL 1851301, at *5 (W.D. Pa. July 3,

2006); Reynolds, 2005 WL 3050154, at *4-5. Accordingly, Petitioner is not entitled to

relief because of the application of revised regulations in connection with the denial

of parole.

        **C.**      **The Commission did not err in considering the nature of**
                    **Petitioner's crime as a factor in its parole determination.**

Petitioner contends that the Commission improperly considered the nature of

his crime in its parole determination and improperly denied parole on that basis.  At

the time of the Commission's decision to deny parole following the October 26, 2005

parole hearing, the version of the guidelines in effect at 28 C.F.R. § 2.80 (2003)

allowed the Commission, under unusual circumstances, to grant or deny parole

notwithstanding the guidelines.  See 28 C.F.R. § 2.80(n)(2003).  Unusual

circumstances are defined as "case-specific factors that are not fully taken into

account in the guidelines, and that are relevant to the grant or denial of parole." 28

C.F.R. § 2.80(n)(1).  As required by that section, the Commission specified in its

Notice of Action the specific factors that it relied on in departing from the applicable

guideline range.  Specifically, the Commission stated that Petitioner demonstrated a

disregard for human life by firing four rounds from an automatic weapon into a car in

which the subject and two others were sitting, thus killing the subject and wounding

one other.  (Dkt. Entry 6, Exhibit 9.)  Further, the Commission explained that the

wounding of another victim in the car was not adequately captured in Petitioner's

base point score and indicates that he is a more serious risk than his score implies.

(Id.)  Based upon its explanation, it appears that the Commission properly

considered the "unusual cruelty to the victim" in determining that Petitioner is a more

serious parole risk than indicated by his total point score.  *See* 28 CFR §

2.80(n)(2)(ii)(C).

The Commission's authority to exercise its discretion by taking other factors

into account rather than simply applying the guidelines also has been recognized in

case law.  See Duckett v. U.S. Parole Commission, 795 F.Supp. 133 (M.D. Pa.

1992)(Commission properly departed from D.C. parole guidelines upon

determination that circumstances of prisoner's current and prior offenses made him

more serious risk to the public).  This discretion afforded to the U.S. Parole

Commission with respect to D.C. offenders is consistent with the discretion that the

District of Columbia Parole Board exercised to grant parole only when release was

not incompatible with public safety.  See Ellis, 84 F.3d at 1418-19.  See also White v.

Hyman, 647 A.2d 1175 (D.C. 1994).  Because the Commission had authority to

consider the nature of Petitioner's crime in deciding whether or not to grant parole,

and it appears from its explanation that it had a rational basis for the denial of parole,

Petitioner's claim that the nature of his crime was accorded undue weight lacks

merit.  See Glascoe, 421 F.3d at 548-49; Furnari, 218 F.3d at 254; Anderson-El v.

U.S. Parole Commission, No. 05 Civ.2697,  2006 WL 2604723, at *6 (S.D. N.Y.

Sept. 11, 2006).

**D.      Petitioner does not have a right to appeal the Commission's decisions**

Petitioner's final claim is that he was denied the right to appeal each of the

Commission's decisions.  Contrary to Petitioner's argument, he did not have a "right"

to appeal that was denied.  Rather, he has pursued the avenue that was open to him to contest the determination of the Commission, which was to file a Petition for Writ of Habeas Corpus in this Court.  Consequently, his claim that he was denied the right to appeal lacks merit.

## IV.     Conclusion

For the foregoing reasons, the Petition for Writ of Habeas Corpus (Dkt. Entry 1-2) will be denied.  Because Petitioner is in custody by virtue of a District of Columbia judgment, he is regarded as a state prisoner for habeas corpus purposes, see Madley v. U.S. Parole Commission, 278 F.3d 1306, 1309 (D.C. Cir. 2002), and thus must obtain a certificate of appealability to pursue an appeal.  Keitt, 238 Fed. Appx. at 758.  Because Petitioner has not made a substantial showing of the violation of a constitutional right in connection with the adverse parole decisions, 28 U.S.C. § 2253(c)(2), a certificate of appealability will not be issued.


                                              **s/ Thomas I. Vanaskie**
                                              Thomas I. Vanaskie
                                              United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ERNEST JENNINGS,** | : | |
| | : | |
| **Petitioner,** | : | **CIVIL NO. 3:CV-06-0679** |
| | : | |
| **v.** | : | **(Judge Vanaskie)** |
| | : | |
| **Warden K. HOGSTEN,** | : | |
| | : | |
| **Respondent.** | : | |

**ORDER**

**NOW, THIS 22nd DAY OF JANUARY, 2008,** in accordance with the

foregoing Memorandum, **IT IS HEREBY ORDERED** as follows:

1.   The Petition for Writ of Habeas Corpus (Dkt. Entry 1-2) is **DENIED**.

2.   The Clerk of Court is directed to close this case.

3.   A certificate of appealability is **DENIED.**


                                                    **s/ Thomas I. Vanaskie**
                                                    Thomas I. Vanaskie
                                                    United States District Judge